ANNA BOWNE and others

*v.*

JAPHET B. DEACON.

A defendant dug a ditch on his own land to drain a marl pit thereon. Afterwards, and within twelve years, the complainants' ancestor extended a ditch, used to drain his land through the lands of a third person (S.), so as to connect it with defendant's ditch, and, in digging it, followed a natural hollow on S.'s lands.—*Held*, that complainants acquired no easement thereby over defendant's lands.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. C. Ewan Merritt,* for complainants.

*Mr. M. R. Sooy,* for defendant.

THE CHANCELLOR.

The complainants, by their bill, allege that on the death of their father, in 1878, they became entitled, by devise in his will, to his farm, situated in Westhampton township, in Burlington county, and that they soon thereafter entered into possession thereof, and have continued to occupy it ever since; that, at the time of his death and for more than twenty years preceding, there had passed over and across the farm, on certain parts thereof, in an easterly direction, a certain water-course or ditch, in which the water had for that period, or more, been wont to run and flow, and of right had run and flowed, over, across, from and off the farm to and over the land of Robert Sowersby or his heirs, for the distance of about twenty feet, and thence into a ditch or water-course on the farm of the defendant, and thence through that farm to Eldridge's creek; and that the defendant, in April, 1879, unlawfully filled up, in part, the channel of the water-course or ditch, where it ran over his land from the complainant's farm, at the division line between

his property and the Sowersby land, and so prevented the passage of the water, and overflowed some of the complainants' land, especially certain fields near their mansion-house, to their great annoyance, inconvenience and discomfort. The bill prays a perpetual injunction, restraining him from filling up or in any way obstructing the channel of the water-course or ditch on his land, and from preventing in any way the free passage of the water from the complainants' land through it.

The defendant, by his answer, denies that the ditch has existed on his land for so long a period as is alleged in the bill, or for more than about seven years before the filing of the bill; and avers that it was dug in or about 1872, to drain two marl holes on his land, and that after it had been dug the complainants' father continued across the Sowersby land a ditch which he had previously dug on his own property, and joined it with the ditch on the defendant's land, without consent or authority to do so. He admits that he did fill up the ditch as stated in the bill, but asserts and insists upon his right to do so, and denies the complainants' right to use the ditch to drain their land.

The case made by the bill is not sustained by the evidence. On the other hand, it appears clearly that the complainants have no right to the relief which they seek. In 1856 or 1857, according to the testimony of the complainants and their brother Joseph, who was sworn for them, their father, Philip Bowne, caused to be dug on his farm, now owned by the complainants, a ditch which is part of the ditch referred to in the bill, and in respect to which relief is sought. It was not, however, connected with the ditch on the defendant's land, the obstruction of which is the ground of complaint; for that ditch was not dug until long afterwards—in the year 1868. Nor did the ditch dug by Bowne extend to the defendant's land. It stopped at the line between the lands of Bowne and Sowersby. Sowersby's land, at that place, lay north of the Bowne land, and it adjoined (lying east of it) the defendant's land on which the defendant's

Bowne *v.* Deacon.

ditch was. Bowne's ditch did not even discharge its water on the defendant's land. According to the testimony of Joseph H. Bowne, it discharged its waters on the land of Sowersby. He also testifies that, in order to extend the ditch to the ditch on the defendant's land, it was necessary to dig a ditch through a knoll. He says the knoll was about four feet high. Other witnesses say it was higher than that. He also testifies that the ditch which his father dug through Sowersby's land to connect the ditch dug, as he and the complainants say, in 1856 or 1857, with the ditch on the defendant's 'land, was dug only about ten or twelve years ago. This testimony is in accordance with that of other witnesses in the cause.

The complainant Anna Bowne testifies as follows: To the question "Was the natural flow of the water accumulating in the meadow through which this ditch (the connecting ditch) now runs, towards and through the land of Robert Sowersby, and along the line in which said ditch was subsequently opened?" she replied: "Not where the present ditch is; not through the knoll." To the question "Without this ditch, would the water accumulating on the meadow now drained thereby, have made for itself a channel in the direction in which the ditch now runs?" she answered: "No; the land could not be drained without digging through the knoll." She says the ditch was dug through the knoll for her father, by Caleb Henry, in 1869.

Henry, called for the complainants, testifies, indeed, that in digging the ditch he followed an old ditch or water-course until he came into the defendant's ditch, but he afterwards, on cross-examination, explains that what he followed was no ditch or water-course, but was a hollow where the water had run. He says that the ditch on Bowne's land then ended near a piece of woods, and the water then worked out through a gully on Sowersby's land, and wasted away over the ground somewhere, he does not know where. He seems to have no recollection of the knoll through which he dug the ditch. He, at Bowne's direction, deepened the

ditch on the defendant's land at that time. It appears that the defendant then strenuously objected to the connection, and at once took advice of counsel, and, acting on it, obstructed the passage of the water, and when, about a week afterwards, Bowne removed the obstruction, he obstructed it again. He says he obstructed it two or three times after Henry dug it out.

It also appears that in 1877, when William Hughes, who was employed by Philip Bowne in ditching, was engaged, under the direction of the latter, in clearing out the ditch on the defendant's land, the defendant stopped him, and Bowne, on the fact being reported to him by Hughes, acquiesced, saying he would see the defendant about the matter. The defendant obstructed the passage of water into the ditch again in April, 1879, just before the bill was filed.

The connection of Bowne's ditch with that on the defendant's land, clearly was not only not with the consent of the defendant, but it encountered his protest and active and forcible opposition, and has never been acquiesced in, but always opposed by him. The complainants do not show themselves entitled to the easement which they claim on the defendant's land.

The view I take of the case renders it unnecessary to enter upon the consideration of the question whether the ditch on Bowne's land was, in fact, dug as early as 1856 or 1857. There is much testimony to the contrary, and the weight of the evidence is that it was not dug until about 1867, and had not existed for over twenty years, as alleged by the complainants, but only about twelve, when the bill was filed. Again, that ditch, whenever it was dug, whether in 1856 or 1857, or not till 1867, was dug for the relief of Bowne's land from the water which, before that time, stood upon it for a great part of the year. It was means devised by Bowne to drain his land, to relieve it from water which otherwise would stand upon it until it soaked away into the ground or evaporated. Joseph H. Bowne testifies

that before the ditch was dug the water stood on the land for two-thirds of the year; that no crops were raised on it before the ditch was dug, and that it was in part reclaimed and made profitable by means of the ditch.

In 1869, Philip Bowne sought still further to relieve his land from the water by continuing the ditch through the knoll, so as to discharge the water in the ditch, by a new and wholly artificial channel, into a ditch on the defendant's land, and that, too, against the active opposition of the latter to the proceeding. And because the defendant, continuing his opposition to the unauthorized use of his property, obstructed the flow of the water into the ditch on his land, this suit was brought.

The complainants show no claim to relief. The bill will be dismissed, with costs.